IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THERESA AMEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 09 C 2712 |
| v. ) | |
| ) | Magistrate Judge Susan E. Cox |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

Plaintiff, Theresa Amey, seeks recovery for her attorney's fees pursuant to the Equal Access to Justice Act ("EAJA").[1] The Commissioner of the Social Security Administration ("the Commissioner") opposes plaintiff's motion. For the reasons discussed below, the Court grants the motion in part and awards attorney's fees totaling $4,975.

**A. Background Facts**

Magistrate Judge Ashman discussed the facts of this case in detail in his February 2, 2012 Opinion and Order,[2] so the Court only briefly restates them here. On February 15, 2005, plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II of the Social Security Act.[3] Her claim was denied initially and on reconsideration, but after an Administrative Law Judge ("ALJ") found that she was not disabled, the Appeals Council remanded plaintiff's case to the ALJ for further consideration.[4] A supplemental

---

[1] 28 U.S.C. § 2412(d).
[2] *See Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *1-6 (N.D. Ill. Feb. 2, 2012). The case was reassigned to this Court from Judge Ashman on June 12, 2012; dckt. 52.
[3] *See id.* at *1.
[4] *See id.* at *2.

hearing was held on June 5, 2008, and the ALJ again found on January 8, 2009 that plaintiff was not disabled.[5] Following the familiar five-step evaluative procedure used in cases of this type, the ALJ found at Step 1 that plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 2, 2003. He found at Step 2 that her obesity, depression, and Chiari malformations[6] were severe impairments when considered in combination with one another. The ALJ did not find at Step 3 that plaintiff's impairments met or medically equaled a Listing. After determining that plaintiff's statements were not credible, and that she had the residual functional capacity ("RFC") to work at the light exertional level, the ALJ found at Step 4 that plaintiff was unable to perform her past relevant work. Relying on testimony by a vocational expert ("VE"), the ALJ concluded that jobs were available that plaintiff could perform and, as a result, that she was not disabled.[7]

Plaintiff appealed the ALJ's ruling to this Court, arguing that the ALJ: (1) failed to account at Step 2 for the functional limitations imposed by the each of her individual impairments; (2) erred on numerous grounds at Step 3; (3) incorrectly assessed her credibility; (4) did not analyze her RFC properly or state sufficient grounds for the finding; and, (5) posed a deficient hypothetical question to the VE at Step 5.[8] Judge Ashman rejected plaintiff's arguments concerning the ALJ's Step 2 and credibility findings. He agreed in part, however, with her claims concerning the Listing issue. Although the ALJ found at Step 2 that the combined effects of plaintiff's obesity, asthma, depression, and Chiari malformations were severe, he failed to identify a Listing that was most

---

[5] R. at 12-19.
[6] As Judge Ashman noted, Chiari malformations are structural abnormalities of the cerebellum that can give rise to balance problems, numbness, dizziness, vomiting, neck pain, depression, and headaches. *See Amey*, 2012 WL 366522, at *2.
[7] R. at 15-19.
[8] *Amey*, 2012 WL 366522, at *6.

2

analogous to plaintiff's aggregate condition as required by the regulations.[9]

Judge Ashman also found that the ALJ overlooked important evidence concerning plaintiff's Chiari malformations in assessing her RFC. As a result, he concluded that the ALJ impermissibly "played doctor" by constructing his own RFC without discussing the reasons that supported his determination.[10] Finally, Judge Ashman found that the ALJ's flawed RFC, together with his oversight of evidence concerning Chiari malformations, formed an insufficient basis for the hypothetical question posed to the VE at Step 5.[11] As a result, Judge Ashman granted plaintiff's motion for summary judgment and remanded the case to the Commissioner for further consideration. After the remand, plaintiff timely filed the instant motion for an award of attorney's fees on April 22, 2012 [dckt. 49].

### B. Discussion

The EAJA provides that a court may award "fees and other expenses" where (1) the claimant was a prevailing party, (2) the government's position was not substantially justified, (3) there are no special circumstances that make an award unjust, and (4) the claimant filed a timely and complete application with the district court.[12] A position is "substantially justified if it has a reasonable basis in fact and law, and if there is a reasonable connection between the facts alleged and legal theory" propounded.[13] The Commissioner bears the burden of proving that both his pre-litigation conduct, including the ALJ's decision, and his litigation position were substantially justified.[14] Under the EAJA, an attorney's fee cannot exceed $125 per hour unless the plaintiff shows that increases in the

---

[9] *Id*. at *9-10 (citing 20 C.F.R. § 404.1526(b)(2) & (3)).
[10] *Id*. at *12-14.
[11] *Id*. at *14.
[12] 28 U.S.C. § 2412(d)(1)(A); *see also Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009).
[13] *Stewart*, 561 F.3d at 683 (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).
[14] *Id*.

3

cost of living since 1996, when the statute was promulgated, "or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."[15] The requesting party carries the burden for showing that the fees sought are reasonable.[16]

In this case, plaintiff was the prevailing party, and she filed a timely request for fees. The Commissioner does not argue that the Government's position was substantially justified, thereby conceding that issue. Instead, the Commissioner contends that plaintiff has failed to show that the billing rates for the fee she seeks --$171.25 for work done in 2009, $178.75 for 2011, and $176.25 for 2012 -- are justified. The EAJA provides two alternative grounds for justifying an enhanced fee above the $125 statutory maximum rate: the effect of inflation or the existence of some "special factor" that warrants a higher fee.[17] As the Seventh Circuit has stated, "[t]he $125 rate is a presumptive ceiling; to justify a higher rate the plaintiff must point to inflation or some other special factor."[18] The only "special factor" mentioned in the statute itself concerns the availability of attorneys qualified to handle the proceeding at issue, a factor that the Seventh Circuit emphasized is narrowly limited to the number of attorneys with the "necessary skills or knowledge specialized in the area of law in question[.]"[19]

Plaintiff claims that there are a limited number of attorneys in Du Page County, Illinois (where she lives) who practice social security law. Her assertion, however, is not supported by any

---

[15] 28 U.S.C. §2412(d)(2)(A)(ii).
[16] *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).
[17] 28 U.S.C. § 2412(d)(2)(A)(ii).
[18] *Matthews-Sheets v. Astrue*, 653 F.3d 560, 563 (7th Cir. 2011).
[19] *Id*. at 565 (citing *Pierce*, 487 U.S. at 572). The Seventh Circuit has stressed that routine social security cases are not generally considered issues that require specialized representation. *See Raines v. Shalala*, 44 F.3d 1355, 1361 (7th Cir. 1995) (holding "that the area of social security law cannot in itself be considered such a specialized area of law practice as to warrant, as a general rule, payment in excess of the [statutory] rate"). *See also Harris v. Railroad Ret. Bd.*, 990 F.2d 519, 521 (10th Cir. 1993) (finding that "a Social Security specialist does not solely by virtue of that expertise fall under the 'special factor' exception").

4

evidence, and "[c]onclusory assertions will not suffice" to satisfy a plaintiff's burden under the EAJA.[20] Moreover, this action was brought in federal court in Chicago, Illinois, not in Du Page County, and plaintiff has not even claimed that a limited number of attorneys exist in the Chicago area who have the necessary skills to bring this suit.

In order to prevail, therefore, plaintiff must show that her request for a fee enhancement is justified by inflation. The Commissioner relies on *Matthews-Sheets v. Astrue*, *supra*, to argue that the Seventh Circuit has interpreted the EAJA to mean that a plaintiff must show both that (1) inflation has increased the cost of providing adequate legal services, and (2) no competent lawyer in the geographical area would represent plaintiff for less than the requested billing rate. This is a high burden of proof, and the Court turns first to the language the Seventh Circuit used in announcing its decision. *Matthews-Sheets* held that a plaintiff cannot rely solely on the fact that inflation exists to receive an enhanced fee rate. The plaintiff must show both that inflation exists and that it justifies the rate sought:

> [F]or while it might seem obvious that a statutory price ceiling should be raised in step with inflation, to do that as a rote matter would produce windfalls in some cases. Inflation affects different markets, and different costs in the same market, in different ways. The framers of the Equal Access to Justice Act were right therefore not to create an *entitlement* to an inflation adjustment; the lawyer seeking such an adjustment must show that inflation has increased the cost of providing adequate legal service to a person seeking relief against the government.[21]

In ordering remand, however, *Matthews-Sheets* expanded the need to show that inflation has raised the cost of "adequate legal service" to include what appears to be a more onerous demonstration that, absent the enhancement, no competent attorney would represent the plaintiff at all:

> And so on remand the plaintiff's lawyer will have to show that without a cost of

---

[20] *Muzzarelli v. Astrue*, No. 10 C 7570, 2012 WL 2921554, at *4 (N.D. Ill. July 17, 2012).
[21] *Matthews-Sheets*, 653 F.3d at 563.

5

living increase that would bring the fee up to $170 per hour, a lawyer capable of competently handling the challenge that his client mounted to the denial of social security disability benefits could not be found in the relevant geographical area to handle such a case.[22]

Courts have reached different conclusions on what *Matthews-Sheets* requires a plaintiff to show in order for a court to award an enhanced fee. Some have largely agreed with the Commissioner's position that it imposes a dual burden of showing both the effects of inflation and that no competent attorney could be found at the statutory rate.[23] Others have rejected this position and found that *Matthews-Sheets* "only requires that a claimant present evidence showing a general increase in attorney's fees in the relevant geographical area due to inflation, such that the legal market could not sustain an hourly rate of $125.[24] At least one court has concluded that the meaning of *Matthews-Sheets* is not entirely clear.[25]

This Court does not need to decide if *Matthews-Sheets* imposes the dual burden the Commissioner relies on because the plaintiff here has not shown either that inflation has affected her counsel's fees or that no attorney could be found at the $125 an hour rate. Plaintiff attempts to satisfy the first requirement by claiming that inflation has raised prices in general since the EAJA became effective in 1996. As in many cases of this type, she has attached to her motion a copy of the Department of Labor's survey of the Consumer Price Index ("CPI") for all United States cities, together with the guidelines of how the CPI is used to calculate enhancements to a variety of base rates. Plaintiff applies these guidelines to show that inflation has raised her counsel's hourly fee

---

[22] *Id*. at 565.
[23] *See*, *e.g.*, *Seabron v. Astrue*, No. 11 C 1078, 2012 WL 1985681, at *3 (N.D. Ill. June 4, 2012); *Heichelbech v. Astrue*, No. 3:10-CV-65, 2011 WL 4452860, at *2 (S.D. Ind. Sept. 26, 2011).
[24] *Just v. Astrue*, No. 11 C 1856, 2012 WL 2780142, at *2 (N.D. Ill. Jul. 9, 2012) (stating that the Commissioner's position "could not be what the Seventh Circuit indented."). *See also Shipley v. Astrue*, No. 1:10-CV-1311, 2012 WL 1898867, at *3 (S.D. Ind. May 23, 2012).
[25] *Claiborne ex rel. L.D. v. Astrue*, --- F. Supp.2d ---, No. 10 C 7728, 2012 WL 2680777, at *3 (N.D. Ill. July 6, 2012).

from the statutory maximum to a rate of $171.25 for work performed in 2009, $178.75 for 2011 work, and $176.25 for 2012. The Commissioner does not contest these calculations or argue that plaintiff's assumptions and methods for reaching these hourly rates are incorrect.

Even assuming that plaintiff's calculations are correct, however, they are insufficient under *Matthews-Sheets* to demonstrate that her counsel is entitled to an enhanced fee. Plaintiff has only shown that a figure of $125 would increase over time if CPI numbers are applied to it. She has not shown that inflation, *in fact*, has affected the legal market or that attorney's fees in the Chicago area have increased due to inflation.[26] That is the point of *Matthews-Sheets*' analysis: a plaintiff is not entitled to an inflation adjustment unless she can show that "inflation has increased the cost of providing adequate legal service" in her relevant market.[27]

Plaintiff's counsel tries to do this by pointing to general increases in his practice costs since 1996. These include: (1) a 75% increase in rent; (2) a 44% increase in utilities; (3) more than a 100% rise in health insurance costs; and (4) a variety of technology-related costs such as computers, fax machines, and software. The Commissioner argues that plaintiff has not shown that these increases are the result of inflation instead of independent factors such as changes counsel has chosen for some reason to make in his practice. The Court disagrees with this claim in part. Plaintiff's counsel represents as an officer of the Court that inflation was the cause for his increased costs. A similar representation by counsel was deemed to be sufficient to show the effect of inflation in *Claiborne*, *supra*,[28] and this Court also accepts counsel's statements as evidence that inflation has raised his cost of doing business in general. If plaintiff were required to produce

---

[26] *Matthews-Sheets*, 653 F.3d at 563.
[27] *Id* (noting that inflation can affect different markets in different ways).
[28] *Claiborne*, --- F. Supp.2d ---, 2012 WL 2680777, at *4.

7

receipts or detailed calculations to support each of the costs she cites, the burden of doing so would potentially impose even greater costs on the Government if plaintiff is successful. The Court does not believe that *Matthews-Sheets* requires such a complex showing.

That said, *Matthews-Sheets* requires more than this, at least standing alone. An enhanced EAJA fee request must be supported by "a general increase in attorney's fees in the relevant geographical area due to inflation[.]"[29] Courts have found that a plaintiff meets this requirement by producing affidavits of other social security practitioners concerning their fees and by showing how counsel's own billing rates have risen since 1996.[30] In this case, however, plaintiff has provided no evidence of this kind at all. Indeed, plaintiff did not even file a reply brief to counter the Commissioner's objections to the request for an enhanced fee. There is no evidence, for example, of how counsel's fees have changed since 1996, what rate he receives for social security or other cases, or what fees other social security attorneys receive in the Chicago area. Instead, plaintiff's counsel states only in broad terms that he could not represent clients for $125 an hour and that no other attorney could do so. Conclusions are not evidence, and plaintiff must show what rates these other practitioners charge, or the rates his own services command in light of inflation. Without further evidence, therefore, plaintiff has shown neither that inflation has increased her counsel's rates to the figures she requests, or that no other attorney in the Chicago area could adequately represent her for the statutory rate of $125 an hour.

The Court recognizes that the rates plaintiff seeks are well within the boundaries of the

---

[29] *Just*, 2012 WL 2780142, at *2.
[30] *Claiborne*, --- F. Supp.2d ---, 2012 WL 2680777, at *4; *Seabron*, 2012 WL 1985681, at *3

enhanced fees awarded in social security cases.[31] But courts decide if an enhanced rate is justified "based on the factual record presented," not by taking judicial notice of other cases. A "plaintiff must show that the higher rate is justified in her particular case."[32] Plaintiff overlooks that the EAJA itself does not even guarantee a minimum rate of $125 an hour. *Matthews-Sheets* stresses that the statute only permits a prevailing hourly rate if it is *less* than $125 and that "doesn't authorize an award of $125 an hour, or even $125 plus inflation.[33] The burden for showing such an enhancement falls on the plaintiff, not the Court.[34] In the absence of any evidence concerning counsel's hourly rates or the rates charged by other practitioners in the Chicago area, the Court finds that plaintiff has not show that the fee enhancement she seeks is justified. Counsel is limited to the EAJA maximum rate of $125 an hour.

Finally, plaintiff requests that any fee awarded should be made payable to her attorney based on her fee agreement with her attorney. *Matthews-Sheets* states that when, as here, a plaintiff has agreed to such an arrangement, "the only ground for the district court's insisting on making the award to the plaintiff is that the plaintiff has debts that may be prior to what she owes her lawyer."[35] No evidence of such prior debts has been submitted, and the Court grant's plaintiff's request that the EAJA fees be made payable directly to her attorney pursuant to her fee agreement.

---

[31] *See, e.g.*, *Claiborne*, --- F. Supp.2d ---, 2012 WL 2680777, at *5 (granting a $181.25 an hour rate); *Seabron*, 2012 WL 1985681, at *4 (allowing a $176.25 rate); *Just*, 2012 WL 2780142, at *3 (permitting $175 an hour).
[32] *Muzarrelli*, 2012 WL 2921554, at * 4.
[33] *Matthews-Sheets*, 653 F.3d at 563.
[34] *See Hensley*, 461 U.S. at 437.
[35] *Matthews-Sheets*, 653 F.3d at 565 (citing *Astrue v. Ratliff*, --- U.S. ---, 130 S.Ct. 1521, 177 L.Ed.2d 91 (2010)).

## C. Conclusion

For the foregoing reasons, the Court grants the motion for attorney's fees [dckt. 49]. Fees are awarded at the rate of $125 an hour, for a total award of $4,975 (39.8 hours x $125 an hour).

**IT IS SO ORDERED.**

**Entered: October 2, 2012**

**SUSAN E. COX**

**UNITED STATES MAGISTRATE JUDGE**